UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

AMERICAN SYSTEMS CONSULTING, INC.,

      Plaintiff,

      v.

LEONARD GLENN DEVIER, et al.,

      Defendants.

Case No. 2:07-cv-818
JUDGE GREGORY L. FROST
Magistrate Judge Terence P. Kemp

## OPINION AND ORDER

This matter is before the Court for consideration of Plaintiff's Motion for Extension of Temporary Restraining Order (Doc. # 6) and Defendants' memorandum in opposition (Doc. # 8), as well as Plaintiff's oral motion to remand. For the reasons that follow, this Court finds the motion to remand not well taken and the motion to extend the temporary restraining order well taken.

### I.  Background

The following facts, culled from the Complaint, do not appear to be in much dispute. In summarizing the pertinent facts, the Court is cognizant that this recitation of the facts is set forth for the limited purpose of addressing the immediate motions before the Court. The parties should note that any findings of fact and conclusions of law made by a district court in addressing a request for injunctive relief are not binding at a trial on the merits. *See United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004) (citing *Univ. of Texas v. Camenisch,* 451 U.S. 390, 395 (1981)).

Plaintiff, American Systems Consulting, Inc., is an Ohio corporation that provides

1

computer and software systems and consulting for private businesses and government agencies. From approximately 1991 through June 2007, Plaintiff provided services to the Defense Commissary Agency ("DeCA"). Defendants Leonard Glenn Devier and John Spatz were both employed by Plaintiff from 1998 to 2007.

On January 21, 2005, both Devier and Spatz signed non-compete agreements with Plaintiff. Among other provisions, the agreements provided that in the event of termination of employment, neither man could work for any competitor of Plaintiff for a period of six months, anywhere in the world where Plaintiff conducted business. The agreements also contain confidentiality and trade secrets provisions precluding the disclosure of Plaintiff's confidential, proprietary, or trade secret information.

Devier's employment with Plaintiff ended on June 30, 2007, and Spatz's employment with Plaintiff ended on April 15, 2007. Both men then began working for Defendant ManTech Security Technologies Corporation (ManTech"), which is allegedly one of Plaintiff's competitors and which had assumed the role of providing services to DeCA.

Seeking to enforce the non-compete agreements and to recover for alleged violations of Ohio's Uniform Trade Secrets Act, Ohio Rev. Code § 1333.61, for unjust enrichment, and for tortious interference with a contractual relationship, Plaintiff filed a complaint in the Court of Common Pleas of Franklin County, Ohio on August 14, 2007. (Doc. # 3.) Upon Plaintiff's motion, the state court then entered a temporary restraining order on that same day. (Doc. # 2-8.) Both parties agree that this order will expire on August 28, 2007.

Defendants removed the case to this Court on August 20, 2007 (Doc. # 2), which meant that the preliminary injunction hearing set for August 24, 2007 in the state court would not occur

(Doc. # 2-8, at 2.) Instead, this Court held an in-chambers, informal conference on August 24, 2007 with the parties' counsel pursuant to S.D. Ohio Civ. R. 65.1(a).

During the course of that conference, the parties raised numerous jurisdictional arguments in addition to arguing the merits of the temporary restraining order. Citing time issues, counsel for Plaintiff stated at the informal conference that she would not be filing a written motion to remand at that time, but nonetheless asked the Court to remand for lack of jurisdiction. The parties agreed to conduct research on the various issues involved in the oral motion to remand, and the Court ordered the parties to file additional briefs by 12:00 p.m. on August 27, 2007. The parties have filed their supplemental briefs on the remand issue (Docs. # 9, 10), and both the oral motion for a remand and the written motion to extend the temporary restraining order (Doc. # 6) are now ripe for disposition.

## II. Discussion

### A. Jurisdiction

There are two basic bases for federal jurisdiction: federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332. Plaintiff posits that this Court lacks jurisdiction to entertain this action under either type of jurisdiction. Thus, Plaintiff argues, a remand is appropriate because the Complaint in this case presents only issues of state law.

Defendants in turn argue that jurisdiction exists based (1) on the federal officer removal statute, 28 U.S.C. § 1442(a), (2) on federal question jurisdiction because the action will involve the interpretation of federal contracts, statutes, and regulations, and (3) on diversity because all parties are diverse and the Complaint seeks damages for at least $75,000.

The parties' dispute potentially implicates both well-settled law and arguably less-settled

law on the issue of removal. Among the well-settled law involved, it is axiomatic that a defendant may remove to federal court an action initially brought in a state court that could have been heard originally in a federal court. 28 U.S.C. § 1441(b). If the federal court finds that it lacks subject matter jurisdiction over the case, it must remand the case. 28 U.S.C. § 1447(c). Federal courts must also construe removal statutes narrowly, resolving uncertainties in favor of remand. *Burns v. Windsor*, 31 F.3d 1092, 1095 (11th Cir. 1994).

The United States Supreme Court has recognized that "[a]s a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). Thus, as the Sixth Circuit has recently explained,

> In the absence of diversity, a defendant may remove a civil action from state court to federal court only if the *plaintiff's* allegations establish "original jurisdiction founded on a claim or right arising under" federal law. 28 U.S.C. § 1441(b). "To determine whether the claim arises under federal law, we examine the 'well pleaded' allegations of the complaint and ignore potential defenses[.]" *Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 6 (2003). Even "a defense that relies on the preclusive effect of a prior federal judgment or the pre-emptive effect of a federal statute will not provide a basis for removal." *Id.* (citations omitted).

*Mikulski v. Centerior Energy Corp.*, ___ F.3d ___, 2007 WL 2372301, at *3 (6th Cir. Aug. 21, 2007). The Supreme Court also recognized that when a complaint pleads no federal claims, a party can remove a state claim based on federal question jurisdiction "in *only* two circumstances–when Congress expressly so provides . . . or when a federal statute wholly displaces the state-law cause of action through complete pre-emption." *Beneficial Nat'l Bank*, 539 U.S. at 8 (emphasis added).

The well-pleaded complaint rule provides that a cause of action arises under federal law only if a plaintiff's properly pleaded complaint affirmatively alleges a federal question–i.e., the

4

complaint's statement of a cause of action shows that it is based upon federal law or the Federal Constitution. *See Beneficial Nat'l Bank*, 539 U.S. at 6; *Horowitz* v. *Marlton*, 116 F. Supp. 2d 551, 553 (D.N.J. 1999). Moreover, when both federal and state law claims are available, a plaintiff's decision to proceed exclusively under state law does not give rise to federal jurisdiction. *See Caterpillar v. Williams*, 482 U.S. 386, 392 (1987).

There are several exceptions to the "well pleaded" complaint rule, such as where a plaintiff "artfully pleads" a state claim and no federal question appears on the face of the complaint. Such action will not foreclose federal jurisdiction, because "plaintiffs may not 'avoid removal jurisdiction by artfully casting their essentially federal law claims as state-law claims.' " *Mikulski*, ___ F.3d ___, 2007 WL 2372301, at *3 (quoting *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 397 n.2 (1981) (quotation marks, citations, and edits omitted)).

The Sixth Circuit has also noted that "[a] related exception is the complete preemption doctrine." *Id.* ("[R]emoval is proper 'when a federal statute wholly displaces the state-law cause of action through complete pre-emption.' " (quoting *Beneficial Nat'l Bank*, 539 U.S. at 8)). Successful removal under this doctrine depends upon the availability of a federal cause of action so sweeping in nature that it completely does away with any state cause of action. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987); *Avco Corp. v. Aero Lodge 735 Int'l Assoc. of Machinists & Aerospace Workers*, 390 U.S. 557 (1968). Thus, the Sixth Circuit has explained that the complete preemption doctrine is a limited rule requiring an express conferral of exclusive federal jurisdiction. *Mikulski*, ___ F.3d ___, 2007 WL 2372301, at *6.

Another possible exception to the well-pleaded complaint rule is the substantial federal question doctrine. *Id.* at *3. Under this exception, a state law cause of action actually arises

under federal law "where the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Franchise Tax Bd. of Calif. v. Constr. Laborers Vacation Trust for S. Calif.*, 463 U.S. 1, 9 (1983). The mere presence of a federal issue in a state cause of action, however, does not automatically confer federal question jurisdiction; rather, the federal issue must be of sufficient weight to be considered substantial. *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 813 (1986).

The Court recognizes that application of this doctrine has not been uniform. Two circuit courts previously held that complete preemption is the *only* exception to the well-pleaded complaint rule. *See, e.g.*, *Waste Control Specialists, L.L.C. v. Environcare of Texas, Inc.*, 199 F.3d 781, 783, *withdrawn & superseded in part by* 207 F.3d 225 (5th Cir. 2000); *M. Nahas & Co., Inc. v. First Nat'l Bank of Hot Springs*, 930 F.2d 608, 612 (8th Cir. 1991). Other decisions affirmed the validity of the substantial federal question exception. *See, e.g.*, *Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164 (1997); *Christian v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808 (1988).

This Court notes the argument that *Beneficial National Bank* apparently resolved much of the foregoing uncertainty that has surrounded the validity of the substantial federal question exception. The dissent in that case argued that the *Beneficial National Bank* majority had effectively reconsidered removal jurisprudence. This reasoning teaches that by recognizing removal *only* in cases involving a congressional mandate or complete preemption, the majority arguably eliminated the substantial federal question exception. The *Beneficial National Bank* majority characterized the complete preemption inquiry as asking whether the state-law cause of action is in reality based on federal law and cited two instances of complete preemption–both of

which concerned federal statutes that provide the exclusive cause of action for the claim asserted. *Id.*, 123 S.Ct. at 2063. But the Supreme Court's decisions in cases such as *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308 (2005), and the Sixth Circuit's discussion of the substantial federal question doctrine in *Mikulski* unquestionably recognize the doctrine as quite alive and well. *See e.g., Mikulski*, ___ F.3d ___, 2007 WL 2372301, at *8 ("Under the substantial-federal-question doctrine, a state law cause of action may actually arise under federal law, even though Congress has not created a private right of action, if the vindication of a right under state law depends on the validity, construction, or effect of federal law.").

But even where the exception has been accepted as valid, a limitation on the substantial federal question exception has historically been the necessity of a federal private cause of action. The United States Supreme Court has stated that "[t]he significance of the necessary assumption that there is no federal private cause of action . . . cannot be overstated." *Merrell Dow*, 478 U.S. at 812. The *Merrell Dow* court added that the congressional determination that there should be no federal remedy for the violation of a federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently "substantial" to confer federal question jurisdiction. *Id.* at 814.

Some district courts interpreted *Merrell Dow* as requiring a finding of a private cause of action under the federal statute in question before federal question jurisdiction may exist. *See, e.g., Meinders v. Refco Sec., Inc.* 865 F. Supp. 721, 723 (D.Colo. 1994) ("*Merrell Dow* simply stands for the proposition that in the absence of a federal private right of action, the presence of federal law in a state law claim is insufficient to establish federal jurisdiction."). These courts

found that because Congress has not provided a private cause of action under federal criminal statutes, those statutes cannot create federal question jurisdiction when used as predicate acts for a state RICO claim. *See id.* at 723; *Horowitz*, 116 F. Supp. 2d at 554-55.

The Sixth Circuit Court of Appeals, however, has traditionally recognized that a private cause of action may not be necessary to establish federal question jurisdiction under the substantial federal question exception. The appellate court has held that even though a complaint does not state a federal cause of action, it may in some cases invoke federal jurisdiction. *Long v. Bando*, 201 F.3d 754, 757 (6th Cir. 2000).

The *Long* court found that the holding in *Merrell Dow* left open the possibility of federal jurisdiction even in the absence of an express or implied federal cause of action, if a substantial federal question of great federal interest is raised by a complaint framed in terms of state law, and if resolution of that federal question is necessary to the resolution of the state-law claim. *Id.* at 759 (citing *International Coll. of Surgeons,* 522 U.S. at 164). It is the nature of the federal interest that matters. *Miller v. Norfolk and W. Ry. Co.*, 834 F.2d 556, 562 (6th Cir. 1987) ("[E]ven when there is [a private] cause of action, the use of a federal statute as an element of a state cause of action may or may not raise a substantial federal question depending upon the nature of the federal interest at stake in the case."). *See also Merrell Dow*, 478 U.S. at 814 n.12. The Supreme Court reinforced this view in *Grable*, a case that the Sixth Circuit has described as explaining that the absence of a cause-of-action provision is not determinative, although it provides a starting point for analyzing whether exercising jurisdiction would risk upsetting the intended federal court-state court balance by encumbering the federal courts with an undesirable quantity of litigation. *Mikulski*, ___ F.3d ___, 2007 WL 2372301, at *16.

The Court therefore summarizes the federal question issue involved here as follows. No party appears to argue that Plaintiff has artfully cast federal claims into state law causes of action, or that complete preemption controls in this removal. The only applicable possibility here for federal question jurisdiction, then, is that the substantial federal question exception applies, with a proclaimed need for uniformity of construction supporting jurisdiction.

But even assuming arguendo that this case implicates a disputed federal issue or issues, the federal issues here–the interpretation of federal contracts, statutes, and regulations–at best inform only possible *defenses* to select state law claims. Importantly, the alleged federal issues present purported defenses to *some* of the discrete claims, but less than the entirety of the action. Any interpretation of federal contracts, statutes, or regulations here cannot prove dispositive of this case as *Mikulski* teaches is important.

Also of significant import here is that the Court cannot discern a federal question of sufficient weight so as to warrant the exercise of federal jurisdiction. In conducting its substantiality inquiry, the Court concludes: (1) the case, a dispute between private companies and employees, only tangentially includes a federal agency, but does not target whether that agency is in compliance with federal law; (2) the potential importance of the issues asserted are qualified by the fact that several of the claims fail to invoke federal law at all or only do so in a fairly limited way; (3) a decision on the federal question(s) will not resolve the case and is in many respects incidental to the outcome of at least two or more claims; and (4) a decision as to the federal question(s) will possibly affect other cases in regard to trade secrets, but will less likely affect non-compete agreements. *See Mikulski*, ___ F.3d ___, 2007 WL 2372301, at *13. Thus, as in *Mikulski*,

> This is not to say that there is no federal interest or even some significant federal interest; there may very well be, and it might not be difficult to find. But such a finding would be immaterial. The pertinent finding, which leads to [the] present conclusion, is that the federal interest in this case is not "substantial" as that term has been defined under the prevailing Supreme Court precedent.

*Id.* at *16. The potential examination of federal law in this case presents simply too insubstantial analysis or interpretation to invoke this Court's jurisdiction.

The absence of a traditional basis for federal question jurisdiction and Defendants' reliance on federal issues as a defense lead into Defendants' invocation of the federal officer removal statute, 28 U.S.C. § 1442(a)(1). That statute provides:

> **(a)** A civil action . . . commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> > **(1)** The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1). Defendants argue that they fall within the statute's scope because they are a company or employees of a company hired by a government agency, they are asserting defenses based on that status, and there is a causal nexus between their actions, which are informed by the government agency's directions, and Plaintiff's claims.

There is indeed persuasive authority supporting the proposition that a private company or employee can fall within § 1442(a)(1). *See, e.g., Stanley v. Wyeth Inc.*, No. 06-1979, 2006 WL 2588147, at *2 (E.D. La. Sept. 8, 2006) (collecting cases). There is also persuasive authority supporting Defendants' position that where a private employee acts under the direction of a federal officer or agency, § 1442(a)(1) will support removal. *See, e.g., Alsup v. 3-Day Blinds,*

*Inc.*, 435 F. Supp. 2d 838, 847-48 (S.D. Ill. 2006). In light of such case law, the Court credits Defendants' removal under § 1442(a)(1) here.

Defendants have produced evidence that evidence that ManTech employee Devier is under the direction of a government official. Defendants are asserting defenses predicated on this fact, and the causal nexus arises from these facts and the allegations of Plaintiff's pleading: if Devier works for ManTech, under in part the direction of a government official, they are relying on trade secrets and confidential information.

It is not dispositive of the removal issue that not all of the claims or parties fall within the framework enabling removal described above. The Court in fact recognizes apparent distinguishing factors between the various claims asserted. For example, it does not matter for removal purposes whether a government official directed Devier to breach his non-compete agreement. What is important, however, is that there is a sound basis for removal of at least one claim by at least one defendant; the remaining claims and parties come along via supplemental jurisdiction. If a government official directs Devier to perform work that implicates impermissible reliance on trade secrets or other confidential information so as to permit Devier to invoke § 1442(a)(1), then Spatz follows him to this federal forum. And if while acting under color of federal authority Devier purportedly breached confidentiality or violated the state trade secrets law (thereby presenting a basis for removal), it does not matter whether he was acting under color of federal authority when he initially went to work for ManTech. The claims are, for purposes of addressing the propriety of the removal, distinct.

Having determined that removal was proper pursuant to § 1442(a)(1), the Court need not and does not address the parties' moot arguments over diversity jurisdiction. In light of the

11

foregoing, the Court **DENIES** Plaintiff's oral motion to remand.

### B. Temporary Restraining Order

The Sixth Circuit Court of Appeals has explained the consequent inquiry involved in addressing either a motion for a temporary restraining order or for a preliminary injunction:

> "When ruling on a motion for [injunctive relief], a district court must consider and balance four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction."

*Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004) (quoting *Blue Cross & Blue Shield Mut. of Ohio v. Columbia/HCA Healthcare Corp.,* 110 F.3d 318, 322 (6th Cir.1997) (citations omitted)). *See also Edward Rose & Sons*, 384 F.3d at 261 (quoting *Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994)). That court has further explained that a district court should not consider the foregoing factors as prerequisites to be met; rather, these factors are to be balanced in a weighing of the equities involved. *Edward Rose & Sons*, 384 F.3d at 261.

Once granted, a temporary restraining order can be extended beyond its initial duration for "good cause shown" or by the consent of "the party against whom the order is directed." Fed. R. Civ. P. 65(b). The rule requires that "[t]he reasons for the extension . . . be entered of record." Fed. R. Civ. P. 65(b). Having considered the parties' oral arguments at the informal conference and the briefing, the Court concludes that Plaintiff has demonstrated good cause warranting an extension. Plaintiff has correctly argued that, absent an extension, Defendants will have been able to overcome continued injunctive relief simply by removing the case to this federal forum. The state court injunction would have terminated on August 24, 2007 if the

preliminary injunction hearing scheduled for that date had proceeded, but Defendants' actions prevented that hearing and therefore continued the injunction until it would otherwise expire under the applicable state civil rule. It would be inequitable for Plaintiff to lose a lawfully obtained injunction issued by the state court simply based on the circumstances of scheduling issues. The injunction should continue or not based on its merits, not as a result of strategy. Additionally, based on the representations of Plaintiff that its business will be irrevocably damaged in the absence of continued temporary injunctive relief–representations the trial court credited–this Court similarly credits for present purposes the state court's finding that Plaintiff will suffer irreparable harm in the absence of a temporary restraining order.

Defendants have raised considerable questions regarding the propriety of whether Plaintiff can ultimately prevail in this litigation. But, based on the notably limited material before the Court at this time, Plaintiff has met its burden. Accordingly, the Court extends for good cause shown the duration of the temporary restraining order. The extant question thus becomes what, if any, security bond the Court should require.

The state court did not require the posting of a bond in connection with its issuance of the temporary restraining order. But in light of "the inherent equitable power [of the Court] to condition an injunction on certain undertakings, including the posting of a security bond by the party seeking the injunction," *Division No. 1, Detroit, Bhd. of Locomotive Eng'rs v. Consol. Rail Corp.*, 844 F.2d 1218, 1225 (6th Cir. 1988) (citation omitted), as well as Rule 65(c), the Court must revisit whether requiring any security bond.

Rule 65(c) provides that "[n]o restraining order ... shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs

13

and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined." Although this language would appear to mandate a bond, the Sixth Circuit has explained that whether to require a bond is within the discretion of the Court. *See Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995). Having considered the equitable circumstances of this case, the Court in its discretion concludes that no posting of a bond is warranted.

### III.  Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiff's oral motion to remand and **GRANTS** Plaintiff's Motion for Extension of Temporary Restraining Order (Doc. # 6).  The temporary restraining order, as extended, will now expire at 11:59 p.m. on September 6, 2007 unless otherwise extended or vacated.  Pursuant to Fed. R. Civ. P. 65(c), the Court in its discretion does not require Plaintiff to post a bond with the Clerk of Courts of the United States District Court for the Southern District of Ohio.

If Plaintiff seeks a preliminary injunction, Plaintiff cannot rely on the application for a preliminary injunction attached to its Complaint.  Plaintiff must instead file a motion for such injunctive relief in accordance with the local rules of this Court.  *See* S.D. Ohio Civ. R. 65.1(b) ("Applications for temporary restraining orders or preliminary injunctions shall be made in pleadings separate from the complaint and in accordance with this Rule").

**IT IS SO ORDERED**.

              /s/ Gregory L. Frost
            GREGORY L. FROST
            UNITED STATES DISTRICT JUDGE